UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAMIEN JOHNSON                                        CIVIL ACTION

VERSUS                                                NO. 07-3596

SHERIFF HARRY LEE, ET AL                              SECTION "B" (3)

ORDER AND REASONS
PURSUANT TO IN CAMERA REVIEW

Plaintiff, Damien Johnson ("Johnson"), filed this complaint on June 25, 2007 alleging violations of civil and constitutional rights under 42 U.S.C. § 1983 against the Sheriff of Jefferson Parish (Newell Normand) and Detectives Don English and Eddie Klein. The focus of his complaint is the plaintiff's April 8, 2004 arrest by officers of the New Orleans Police Department, who were executing a warrant for arrest issued on February 4, 2004 pursuant to the affidavit of Jefferson Parish Sheriff's Office Detective Eddie Klein. The aforesaid affidavit charged Damien Johnson with a violation of La. Rev. Stat. 14:30.1in connection with the second degree murder of Michael Medeiros reported on January 29, 2004 at 6:25 p.m. *See* Warrant of Arrest and Affidavit of Detective Eddie Klein dated February 4, 2004 [Plaintiff's Exhibit "2" to Motion to Compel/Doc. #24].

The thrust of plaintiff's complaint is that investigating officer, Detective Klein, ignored the fact that twelve year old eyewitness Brandon Bourg initially identified plaintiff's younger brother (Darius Johnson) as the shooter when presented a photographic line up. Plaintiff claims that, notwithstanding the foregoing, Detective Klein went to the Grand Jury with the assertion that Damien Johnson was identified as the shooter. Plaintiff further complains of other alleged

1

irregularities committed by Detective Klein in the context of the July 1st, 2004 Grand Jury Proceedings, to wit: (1) the transcript of the tape containing interviews of other witnesses *allegedly* requested by the Grand Jury from Klein mysteriously disappeared; (2) Klein *allegedly* produced no live witnesses before the grand jury and substituted his own affidavit as to the witnesses testimony and allegations; and (3) Detective English was aware of these actions. Johnson alleges that, as a result of the defendants' actions, plaintiff spent two years and three months in jail until June 26, 2006 when the Jefferson Parish District Attorney dropped all charges.

Johnson's allegations against the Jefferson Parish Sheriff are that: (1) he failed to properly train, instruct, monitor and discipline the detectives; (2) there was an inadequate review of the detective's investigative charges; and (3) that the defendants' actions were motivated by ill-will against the plaintiff or a desire to secure advancement by demonstrating a high rate of convictions in cases assigned.

In sum, plaintiff contends that he was deprived of his civil rights for a period of 27 months in jail. His allegations include malicious prosecution and wrongful imprisonment under state law. Plaintiff seeks $2,790,000 in damages plus punitive damages and attorney's fees.

Assistant District Attorney, Paul D. Connick, Jr., seeks an order quashing plaintiff's subpoena duces tecum for transcripts of the July 1, 2004 Grand Jury Proceedings. ADA Connick contends that the grand jury proceedings should remain protected as secret and confidential and emphasizes that transcripts of the aforesaid grand jury proceedings may only be released upon a showing of compelling interest. He argues that plaintiff has failed to show such a compelling

interest; in the alternative, ADA Connick seeks an *in camera* review to determine what, if any, portion of the proceedings should be produced based upon a finding of compelling interest. He provided the transcripts to the undersigned pursuant to the hearing on December 17, 2008.

Connick submits that three questions must be answered affirmatively before the Grand Jury proceedings can be turned over to Damien Johnson: (1) Does the plaintiff have any evidence in his possession which is exculpatory; (2) Was such evidence known to the detective at the time of the Grand Jury Proceedings; and (3) Would the allegedly unpresented testimony cause the grand jury to return a verdict of "not true." He further argues that the plaintiff has nothing in his possession which is exculpatory. ADA Connick contends that the answer to all three inquiries is "No." He submits that, at best, the "evidence" submitted by the plaintiff may be favorable for purposes of cross-examination only. Assuming that the evidence was presented to the Grand Jury (and it may have been), ADA Connick argues that it is not evidence of such a nature as to preclude a grand jury indictment. Finally, Connick submits that what plaintiff has done is to weave a few favorable items in witnesses statements into a possible defense scenario and that plaintiff has not demonstrated the requisite compelling interest.

## ANALYSIS

The Fifth Circuit in *In Re Grand Jury Testimony,* 832 F.2d 60 (5th Cir. 1987) explained:

> Federal courts long have recognized that secrecy is essential to maintaining the integrity of the grand jury system. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 428, 103 S.Ct. 3133, 3140, 77 L.Ed.2d 743 (1983); *United States v. Procter & Gamble*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). Rule 6(e) Fed.R.Crim.P. codifies this value. Secrecy, however, is not an absolute, and ours is the not uncommon judicial task of

balancing. Rule 6(e) provides certain exceptions, and case law has established that a district court may properly order release of grand jury materials where a party demonstrates with particularity a "compelling necessity" for the materials. *Procter & Gamble*, 356 U.S. at 682, 78 S.Ct. at 986.

The Supreme Court has insisted that the need for disclosure be demonstrated "with particularity." *See Procter & Gamble*, 356 U.S. at 683, 78 S.Ct. at 987. In *Douglas Oil,* the court developed a three prong test to determine particularized need, now the touchstone of review:

> Parties seeking grand jury transcripts under Rule 6(e) must show (1) that the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that their request is structured to cover only material so needed.

*Douglas Oil*, 411 U.S. at 222, 99 S.Ct. at 1674 (enumeration added).

*In Re Grand Jury Proceedings*, 832 F.2d at 62-63.

As aforestated, under federal common law, grand jury proceedings have traditionally been kept secret.[1] Central to the analysis are the interests that confidentiality of grand jury proceedings serves, including the voluntary participation of prospective witnesses, the full and frank testimony of witnesses appearing before the grand jury, reducing the risk that those about to be indicted would flee or try to influence individual grand jurors to vote against indictment, and protecting from public ridicule persons accused but exonerated by the grand jury.[2]

In cases like this, where plaintiff's claims arise under federal law and a federal court considers the extent of the disclosure of state grand jury materials, federal common law, rather than state law, is the source of any privileges afforded to grand jury proceedings.[3] Although

---

[1] *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218-19, n. 9 (1979).

[2] *Id*. at 218-19; *U.S. v. Sells Engineering, Inc.*, 463 U.S. 418, 424 (1983).

[3] *See In re Grand Jury,* 737 So.2d 1, 9 (La. 1999) (explaining that (1) the case deals with the disclosure of state grand jury materials by a district attorney to federal authorities, (2) Rule 6(e) provides for a disclosure of federal grand jury materials by a federal attorney to state

*Douglas Oil* focused on federal grand jury proceedings, the reasons for secrecy are the same in the context of state grand jury proceedings.[4]

Having reviewed the subject transcript of the July 1, 2004 grand jury proceedings *in camera,* the undersigned is convinced that it should <u>not</u> be disclosed. The Court has considered all of the relevant factors, including the nature of the information at issue, the possibility that witnesses will be discouraged from testifying freely before the grand jury, whether the grand jury's investigation has ended, the possibility of future criminal trials, the danger to any witnesses who may have testified before the grand jury and whether the information sought has already become public. The Court has also taken into consideration that the plaintiff has not been hampered in his ability to conduct discovery and admittedly has at his disposal the following, to wit: both transcribed interviews of eyewitness Brandon Brown, the affidavit and a deposition of Jefferson Parish Detective Eddie Klein, the Twelve Page Report of Detective Eddie Klein with 3 Photographic Line Ups and the transcribed interviews of Tremayne Kennedy, Joshua Medeiros and Joey Alexie. *See* Plaintiff's Exhibits to Motion to Compel [Doc. #24].

---

authorities and (3) the Louisiana Supreme Court's decision in *Trosclair*, requiring a defendant to show a particularized need for disclosure which outweighed the need for secrecy, is an adaptation of the Rule 6(e) requirement).

[4]*See In re Grand Jury Subpoenas,* 387 So.2d 1140 (La. 1980) (noting that traditionally, the proceedings of the grand jury have been cloaked in secrecy for various reasons including protection of the safety and freedom of witnesses and permits the greatest possible latitude in their voluntary testimony); *Martin v. Connick,* 752 So.2d 978 (La. App. 4th Cir. 2000) (noting that it is well established in the law that there is a strong public policy of maintaining the secrecy of grand jury proceedings, the "indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity" and that a party seeking disclosure of grand jury materials must demonstrate compelling need "with particularity" and must prove that, absent the disclosure, he will be "greatly prejudiced").

On balance, the relevant factors weigh in favor of maintaining secrecy with respect to the grand jury proceedings. Plaintiff's demonstrated need for the material is *not compelling* and does not outweigh the interests in maintaining secrecy to protect any testifying witnesses from danger (which a protective order may not accomplish).

In this case, plaintiff seeks production of the actual transcript of the grand jury proceedings, which would reveal the nature and course of the grand jury's investigation, the testimony/identity of witnesses who appeared before the grand jury and testified against the accused and said witnesses' location. Johnson's extraordinarily broad request supports this Court's conclusion that plaintiff is truly seeking general discovery of the proceedings before the grand jury rather than particular information. Plaintiff's conclusory claims of false testimony, bad faith and prosecutorial misconduct are not tantamount to "particularized need," which is necessary to justify wholesale disclosure of grand jury proceedings. The need for secrecy does not evaporate simply because the investigation has ended.[5] This Court's close inspection of the plaintiff's argument and written submissions in conjunction with an *in camera* review reveals that the plaintiff has failed to reveal particular *facts* mitigating the imperative to preserve the secrecy of grand jury proceedings.

Further addressing the demanding standard of particularized need, the undersigned is persuaded that the evidence sought by the plaintiff does not directly negate the guilt of the formerly accused (Johnson) and is not clearly exculpatory. In this regard, the Court notes that the testimony of a witness is not clearly exculpatory if contradicted by incriminating testimony

---

[5]*See United States v. Schreiber,* 832 F.2d 70 (5th Cir. 2001) (noting that policy interests in the need for grand jury secrecy do not end with the completion of a criminal prosecution).

of another eyewitness. Moreover, an accused's self-serving statement denying involvement in a crime, although such a statement directly negates guilt, ordinarily would not be sufficiently credible to be clearly exculpatory.

Insofar as plaintiff characterizes certain "recantation testimony" by Brandon Bourg as clearly exculpatory, authorities suggest just the opposite – *i.e.*, that "recantation testimony is generally considered exceedingly unreliable."[6] Whereas a recantation may be pertinent to the credibility of a witness to the events in question, such evidence is not clearly exculpatory because it is highly unreliable.[7] Partly because recantations are often induced by duress or coercion,[8] the sincerity of a recantation is to be viewed with "extreme suspicion."[9]

As to the existence of probable cause at the time of Damien Johnson's arrest in June of 2004, probable cause was conclusively established by his indictment. It is well-settled that an indictment is conclusive proof of probable cause which connotes that probable cause existed for the underlying arrest.[10] Indeed, absolute certainty of conviction is not the benchmark by which

---

[6] 58 Am.Jur.2d "New Trial" § 440 (1989); *accord State v. Carter,* 69 N.J. 420, 427, 354 A.2d 627 (1976); *State v. Baldwin,* 47 N.J. 379, 400, 221 A.2d 199, *cert. denied,* 385 U.S. 980 (1966).

[7] *See People v. Dillard,* 214 A.D.2d 1028, 627 N.Y.S.2d 184, 184 (1995) (holding that the prosecutor's failure to inform the grand jury of witness's recantation of prior allegations against defendant did not require dismissal of the indictment because "[s]uch evidence merely relates to credibility").

[8] 58 Am.Jur.2d, *supra*, § 440.

[9] *United States v. Santiago,* 837 F.2d 1545, 1550 (11th Cir. 1988).

[10] *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Gibson v. State,* 758 So.2d 782, 790 (La. 2000); *State v. Holmes*, 388 So.2d 722, 724 (La. 1980); *State v. Howard*, 325 So.2d 812 (La. 1976); *State v. Pierre*, 606 So.2d 816, 820 (La. App. 3 Cir.1992).

7

probable cause is determined.[11]

Any constitutional rights violation based upon an investigating officer's testimony before the grand jury also fails as a matter of law. Assuming Detective Klein was a witness called before the grand jury to testify truthfully, the Supreme Court has held that witnesses in judicial proceedings receive "absolute immunity from damages liability under § 1983 based on their testimony."[12] In *Briscoe,* the Supreme Court affirmed absolute witness immunity already recognized in several circuits. However, the Supreme Court went further to assert that police officers who testify about the performance of their official duties, even perjuring themselves, may not be held liable in § 1983 cases.[13] The Court stated:

> When a police officer appears as a witness he may reasonably be viewed as acting like any other witness sworn to tell the truth – in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding. Nothing in the language of the statute suggests that such a witness belongs in a narrow, special category lacking protection against damage suits.

*Briscoe,* 460 U.S. at 335-336.[14]

With respect to any claim of deprivation of liberty based on violations of the Due Process

---

[11]*See Gibson v. State,* 758 So.2d at 791(concluding that probable cause existed at the time of plaintiff's arrest and thereafter, notwithstanding the fact that plaintiff was granted post conviction relief and his indictment was *nolle prosequied* and reversing the trial court and court of appeal finding of fault on the part of the City based on lack of probable cause)

[12]*See Briscoe v.LaHue,* 460 U.S. 325, 326 (1983).

[13]*Id.*

[14]*See also Lyles v. Sparks,* 79 F.3d 372, 378 (4th Cir. 1996) (specifically extending the protection of absolute immunity for government witnesses to their grand jury testimony).

Clause of the Fourteenth Amendment, the Supreme Court has held that an injury caused by the negligence of a state official is not a violation of the Due Process Clause creating a right redressable under § 1983.[15]

All of the claims against the Sheriff of Jefferson Parish are based on the allegedly wrongful actions of Detective Klein. In order to prevail on a claim against a sheriff under § 1983, documentation of widespread abuse is necessary. Plaintiff cannot satisfy his burden of proof by pointing to a single incident or isolated incidents.[16] Therefore, insofar as liability of the Jefferson Parish Sheriff is concerned, plaintiff has not shown particularized need for disclosure of the grand jury proceedings relative to this one instance involving plaintiff's indictment on a charge of second degree murder.

As to prosecutorial liability for lawsuits based on malicious prosecution, the Supreme Court in *Imbler v. Pachtman,* 424 U.S. 409 (1976) held that "in initiating a prosecution and presenting the State's case," the prosecutor is entitled to absolute immunity from civil liability for damages under § 1983.[17] In *Burns v. Reed,* 500 U.S. 478 (1991), the Court held that a prosecutor was absolutely immune from suit for his actual participation in a judicial hearing to determine probable cause to

---

[15]*See Daniels v. Williams,* 474 U.S. 327, 328 (1986).

[16]*See Bourg v. St. Tammany Parish Sheriff,* 336 F.3d 363, 370 (5th Cir. 2003) (holding that (1) both of Bourg's theories required proof of deliberate indifference, (2) just as proof of a custom or practice requires more than a showing of isolated acts, proof of deliberate indifference, generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights and (3) deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation").

[17]*Imbler v. Pachtman,* 424 U.S. 409, 431(1976)

issue a search warrant.[18] In *Gibson v. State*, 758 So.2d 782 (La. 2000), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 656 (2000), the Louisiana Supreme Court reiterated that prosecutors sued for alleged civil rights violations under Section 1983 have absolute immunity for acts done within the scope of the prosecutors' duties during criminal prosecutions.[19] It is clear from the jurisprudence that when a prosecutor is functioning as a state advocate initiating a criminal prosecution, such as the grand jury proceeding in the case at bar, he is entitled to absolute prosecutorial immunity.[20] Because the prosecutor and grand jury witnesses are absolutely immune from a civil damage suit deriving from their participation in grand jury proceedings, denying Johnson access to such testimony cannot possibly cause injustice in this Section 1983 action.

Finally, the Court addresses plaintiff's argument that the prosecutor must alert the grand jury to the nature and extent of the available exculpatory evidence. In *United States v. Williams,* the Supreme Court rejected defendant's attempt to convert a nonexistent duty of the grand jury into an obligation of the prosecutor, stating:

> The authority of the prosecutor to seek an indictment has long been understood to be "coterminous with the authority of the grand jury to entertain [the prosecutor's] charges." *United States v. Thompson,* 251 U.S., at 414, 40 S.Ct., at 292. If the grand jury has no obligation to consider all "substantial exculpatory" evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.

---

[18]*Burns v. Reed,* 500 U.S. 478, 487 (1991).

[19]*Gibson v. State*, 758 So.2d 782, 792 at n. 1 (La. 2000) (Calegero, C.J. concurring) (*citing Imbler*, 424 U.S. at 427).

[20]*Id. See also* La. Rev. Stat. 42:1441(granting immunity to the State for damages caused by district attorneys within the course and scope of their official duties); *Knapper v. Connick,* 681 So.2d 944, 950 (La. 1996) (granting absolute immunity to prosecutors from malicious prosecution suits when the activities complained of fall within the scope of the prosecutor's role as an advocate for the state and are intimately associated with the conduct of the judicial phase of the criminal process).

*United States v. Williams,* 112 S.Ct. at 1745.

## CONCLUSION

Pursuant to this Court's *in camera* review and for all of the above and foregoing reasons, the undersigned Magistrate Judge has determined that plaintiff has failed to demonstrate that the grand jury testimony sought "is needed to avoid a possible injustice"[21] in his § 1983 action. The Court emphasizes that Detective Klein deposed at length and that Brandon Brown's transcribed statements dated January 30, 2004 and February 3, 2004 are in the possession of the plaintiff. The possibility that a witness' grand jury testimony differed from that given on another occasion is insufficient reason to pierce the veil of secrecy which protects Grand Jury proceedings.[22] Accordingly,

**IT IS ORDERED** that Connick's Motion to Quash SDT #28 is GRANTED and the subject transcript of the grand jury proceedings shall <u>not</u> be disclosed to the plaintiff.

New Orleans, Louisiana, this 31st day of December, 2008.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[21]*Douglas Oil Co.,* 441 U.S. at 222.

[22]*See In re Grand Jury Testimony,* 832 F.2d 60 (5th Cir. 1987) (reversing Judge Polozola's order releasing grand jury testimony in a civil racketeering action and holding that plaintiff fialed to establish particularized need for disclosure and was not entitled to transcripts for impeachment or refreshing recollection); *Lucas v. Turner*, 725 F.2d 1095 (7th Cir. 1984) (finding that no evidence exists that anyone flouted the secrecy of the grand jury, no evidence substantiates that the defendants had access to or used grand jury testimony to prepare for deposition, plaintiff's allegations fail to provide detailed and concrete averments necessary to compel disclosure and plaintiff's request for grand jury materials is nothing fore than a request to engage in a fishing expedition).